```
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2

 3   ------------------------------------X
                                         :   16-CR-00617 (BMC)
 4   UNITED STATES OF AMERICA,           :
                                         :
 5               v.                      :   225 Cadman Plaza East
                                         :   Brooklyn, New York
 6   CARMICHAEL, et al.,                 :
                                         :   June 19, 2017
 7               Defendants.             :
     ------------------------------------X
 8

 9        TRANSCRIPT OF CRIMINAL CAUSE FOR GUILTY PLEA
            BEFORE THE HONORABLE JAMES ORENSTEIN
10               UNITED STATES MAGISTRATE JUDGE

11
     APPEARANCES:
12
     For the Government:        LINDSAY K. GERDES, ESQ.
13                              ANDREY SPEKTOR, ESQ.
                                U.S. Attorney's Office
14                              Eastern District of New York
                                271 Cadman Plaza East
15                              Brooklyn, New York  11201

16   For Lashawn Ballance:      SUSAN G. KELLMAN, ESQ.
                                25 8th Avenue
17                              Brooklyn, New York 11217

18   For Edward Carrillo:       ERIC P. FRANZ, ESQ.
                                Law Offices of Eric Franz, PLLC
19                              747 Third Avenue
                                20th Floor
20                              New York, New York 10017

21   For Johnnie Monroe:        JOEL MARK STEIN, ESQ.
                                Law Offices of Joel M. Stein, Esq.
22                              30 Wall Street, 8th Floor
                                New York, New York 10005
23
     Court Transcriber:         RUTH ANN HAGER, C.E.T.**D-641
24                              TypeWrite Word Processing Service
                                211 North Milton Road
25                              Saratoga Springs, New York 12866


     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service
```

                                                                2

1  (Proceedings began at 2:12 p.m.)

2          THE COURT:  All right, folks.  Everybody ready?

3  Yes, Your Honor.

4          THE COURT:  All right.  So we're on the record in

5  United States against Lashawn Ballance, Edward Carrillo, and

6  Johnnie Monroe, 16-CR-617.  Counsel, would you state your

7  appearances, please, starting with the Government?

8          MS. GERDES:  Good afternoon, Your Honor.  Lindsay

9  Gerdes and Andrey Spektor for the United States.

10         THE COURT:  Good afternoon.

11         MS. KELLMAN:  Good afternoon, Your Honor.  Susan

12 Kellman for Lashawn Ballance.  My client is present in the

13 court, Judge.

14         THE COURT:  Good afternoon to both of you.

15         MR. FRANZ:  Good afternoon, Your Honor.  Eric Franz

16 on behalf of Edward Carrillo seated to my left.

17         THE COURT:  Good afternoon to both of you.

18         MR. STEIN:  Good afternoon, Judge.  Joel Stein for

19 Johnnie Monroe.

20         THE COURT:  Good afternoon to both of you.  You're

21 Mr. Monroe?

22         DEFENDANT MONROE:  Yes.

23         THE COURT:  Okay.  All right.  Counsel, I understand

24 your clients each wish to plead guilty to Count IV of the

25 indictment pursuant to an agreement with the Government, is

3

1   that correct?

2              MR. FRANZ:  It's actually a lesser included count --

3              THE COURT:  Lesser included.  Forgive me.  Is that

4   in each case?

5              MR. GERDES:  Yes, Judge.

6              THE COURT:  Lesser included.  Okay.  All right.  And

7   gentlemen -- I'm addressing the defendants -- if you're going

8   to plead guilty to a crime today I'm going to have to ask you

9   certain questions.  Your answers must be truthful, so I'm

10  going to ask each of you to stand up for a moment, raise your

11  right hand so I can swear you in.  Please raise your right

12  hand.

13     LASHAWN BALLANCE, EDWARD CARRILLO, JOHNNIE MONROE, SWORN

14             THE COURT:  All right.  Gentlemen, you're sworn to

15  tell the truth.  You must tell the truth.  If you were to

16  deliberately lie in response to any of my questions you could

17  face additional questions for perjury.  Do you all understand

18  that?

19             DEFENDANTS:  Yes.

20             THE COURT:  Some of these questions I'll just have

21  you all answer together.  Some of them I may ask you

22  separately so bear with me when I do that, but I'll note that

23  you all answered yes.  So if there's anything that I say that

24  you need me to repeat or explain, please let me know.  I'll be

25  happy to do so, but it's very important that you understand my

4

1  questions.  Also, if you need time to confer with your

2  attorneys let me know that.  I'll give you as much time as you

3  like.  You all understand that?  Yes?  All right.

4          And I've got from each of you now two documents.

5  From each of you I've got a one-page consent form that appears

6  to have your signature and then a multiple-page document that

7  appears to be your agreement with the Government.

8          Mr. Ballance, did you sign those documents?

9          DEFENDANT BALLANCE:  Yes.

10         THE COURT:  And did you read and under stand them

11 before you signed them?

12         DEFENDANT BALLANCE:  Yes.

13         THE COURT:  And Mr. Carrillo, did you understand --

14 read and understand those documents?

15         DEFENDANT CARRILLO:  Yes.

16         THE COURT:  And that's your signature on those

17 documents?

18         DEFENDANT CARRILLO:  Yes.

19         THE COURT:  And Mr. Monroe, did you read and

20 understand those documents?

21         DEFENDANT MONROE:  Yes.

22         THE COURT:  And it's your signature on the documents

23 I've got up here?

24         DEFENDANT MONROE:  Yes.

25         THE COURT:  All right.  I'll discuss each of them

5

1  with you in some more detail as we go on, but first I want to

2  make sure that you're each confident to proceed.  I'm going to

3  do that with each of you individually.  I'll start with

4  Mr. Ballance.

5          Sir -- oh, I'm sorry.  Before I get to that, if I

6  recall, Mr. Spektor and Ms. Gerdes, I don't have the

7  indictment in front of me.  Actually, I could use that if

8  you've got a copy.  But my recollection is that there's

9  robbery charges in the indictment; is that correct?

10          MR. SPEKTOR:  There is.

11          MR. GERDES:  That's correct, Your Honor.

12          THE COURT:  Okay.  And there may be other crimes

13  that have victims.  Has the Government notified each victim of

14  all crimes charged in the indictment?

15          MR. GERDES:  Yes, Your Honor.

16          THE COURT:  Of today's proceeding?

17          MR. GERDES:  Yes, Your Honor.

18          THE COURT:  Has any expressed a desire to be heard

19  today?

20          MR. GERDES:  No one has, Your Honor.

21          THE COURT:  Okay.  And I see there's several people

22  sitting in the gallery.  I don't know if you need to identify

23  yourselves if you don't want to, but if anybody here believes

24  themselves to be a victim of any crime charged in the

25  indictment today and wishes to be heard about whether a plea

6

1   should be accepted, I will give you an opportunity to speak if

2   you'd like to be heard.  Just let me know.

3          All right.  Now, getting back to the defendants,

4   I'll start again with you, Mr. Ballance.  I want to make sure

5   you're competent to proceed.  How old are you?

6          DEFENDANT BALLANCE:  Forty-one.

7          THE COURT:  How far did you go in school?

8          DEFENDANT BALLANCE:  GED.

9          THE COURT:  What does that mean -- oh, GED.

10         DEFENDANT BALLANCE:  Yes.

11         THE COURT:  I didn't understand you.  Are you now or

12  have you recently been under the care of a doctor or a

13  psychiatrist for any reason?

14         DEFENDANT BALLANCE:  No.

15         THE COURT:  In the last 24 hours have you had any

16  pill or drug or medicine or alcohol?

17         DEFENDANT BALLANCE:  No.

18         THE COURT:  Have you ever been hospitalized or

19  treated for addiction or substance abuse?

20         DEFENDANT BALLANCE:  No.

21         THE COURT:  Is your mind clear right now?

22         DEFENDANT BALLANCE:  Yes.

23         THE COURT:  Have you had any difficulty

24  understanding my questions so far?

25         DEFENDANT BALLANCE:  No.

7

1             THE COURT:  All right.  Mr. Carrillo, let me turn to

2    you next.  How old are you?

3             DEFENDANT CARRILLO:  Forty-four.

4             THE COURT:  How far did you go in school?

5             DEFENDANT CARRILLO:  Associates degree.

6             THE COURT:  And are you now or have you recently

7    been under the care of a doctor or psychiatrist for any

8    reason?

9             DEFENDANT CARRILLO:  No.

10            THE COURT:  In the last 24 hours have had any pill

11   or drug or medicine or alcohol?

12            DEFENDANT CARRILLO:  No.

13            THE COURT:  Have you ever been treated or

14   hospitalized in any way for a substance abuse or addiction

15   problem?

16            DEFENDANT CARRILLO:  No.

17            THE COURT:  And is your mind clear right now?

18            DEFENDANT CARRILLO:  Yes.

19            THE COURT:  And have you any difficulty

20   understanding me so far?

21            DEFENDANT CARRILLO:  No.

22            THE COURT:  And finally, Mr. Monroe, how old are

23   you?

24            DEFENDANT MONROE:  Forty-six.

25            THE COURT:  How far did you go in school?

1          DEFENDANT MONROE:  Eleventh grade.

2          THE COURT:  And are you now under the care of a

3  doctor or psychiatrist?

4          DEFENDANT MONROE:  No.

5          THE COURT:  Have you had any pill or drug or

6  medicine or alcohol in the last 24 hours?

7          DEFENDANT MONROE:  No.

8          THE COURT:  Have you ever been treated or

9  hospitalized for substance abuse or addiction problems?

10         DEFENDANT MONROE:  No.

11         THE COURT:  So is your mind clear is right now?

12         DEFENDANT MONROE:  Yes.

13         THE COURT:  And have you had any difficulty

14 understanding my questions so far?

15         DEFENDANT MONROE:  No.

16         THE COURT:  All right.  Now I'll turn to the

17 attorneys.

18         Ms. Kellman, have you discussed the guilty plea with

19 your client?

20         MS. KELLMAN:  I have, Your Honor.

21         THE COURT:  In your view does he understand the

22 rights that he would waive by pleading guilty?

23         MS. KELLMAN:  I believe he does, Judge.

24         THE COURT:  And have you had any reason to question

25 your client's competence to proceed today?

1           MS. KELLMAN:  No, Your Honor.

2           THE COURT:  All right.  Mr. Franz, have you

3    discussed a guilty plea with your client?

4           MR. FRANZ:  I have.

5           THE COURT:  And in your view does he understand the

6    rights that he will waive by pleading guilty?

7           MR. FRANZ:  Yes.

8           THE COURT:  Do you have any reason to question your

9    client's competence to proceed today?

10          MR. FRANZ:  No.

11          THE COURT:  And finally, Mr. Stein, have you

12   discussed the guilty plea with your client?

13          MR. STEIN:  Yes.

14          THE COURT:  In your view does he understand the

15   right that he will waive by pleading guilty?

16          MR. STEIN:  Yes.

17          THE COURT:  And do you have any reason to question

18   your client's competence to proceed?

19          MR. STEIN:  No.

20          THE COURT:  Okay.  Thank you, all.

21          Now, addressing all of the defendants together,

22   gentlemen, you've each filled out this one-page form and

23   signed it.  It's called a consent to have a plea taken before

24   a United States magistrate judge.  I want to explain what

25   that's about.  I'm what's known as a magistrate judge.  Your

1  case is assigned to a higher ranking judge named Judge Cogan.

2  The most important difference between us for today's purpose

3  is that if you are convicted of a crime in this case, it's

4  Judge Cogan, not me, who's going to decide what your sentence

5  should be.  Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Okay.  Now, for that reason you might

8  prefer to have Judge Cogan listen to your plea in person and

9  you have every right to do that if you prefer.  If that's what

10  you want, we'll find a time when Judge Cogan is available and

11  no harm will come to you from making that decision.  Do you

12  all understand that?

13          THE DEFENDANTS:  Yes.

14          THE COURT:  You're all indicating yes.  Okay.  Now,

15  if you all understand that you have that right and you're

16  willing to waive that right, I'll listen to your plea today.

17  We're making a recording of everything that's being said and

18  Judge Cogan will read a transcript of today's proceeding

19  before he decides whether to accept your plea and before he

20  decides what your sentence should be.  You all understand

21  that?

22          THE DEFENDANTS:  Yes.

23          THE COURT:  Okay.  Mr. Ballance, are you willing to

24  give up your right to have Judge Cogan listen to your plea and

25  have me do that instead today?

1          DEFENDANT BALLANCE:  Yes.

2          THE COURT:  Okay.  And Mr. Carrillo, are you willing

3   to give up your right to have Judge Cogan listen to your plea

4   and instead have me conduct today's proceeding?

5          DEFENDANT CARRILLO:  Yes.

6          THE COURT:  And Mr. Monroe, are you willing to give

7   up your right to proceed before Judge Cogan today and instead

8   have me conduct --

9          DEFENDANT MONROE:  Yes.

10          THE COURT:  -- the proceedings?  Okay.  Is that what

11   you all intended by signing these one-page forms?

12          THE DEFENDANTS:  Yes.

13          THE COURT:  All indicating yes.  Okay.  Now, I

14   should say to counsel on all sides, to the extent I ask

15   questions of the group and answers as a group, any of you

16   think I should for purposes of a clear record ask the clients

17   individually, let me know that and I'll, of course, do that.

18          MS. KELLMAN:  Thank you, Your Honor.

19          THE COURT:  All right.  Now, gentlemen, the next

20   thing I want to do is make sure you understand the charge

21   against you and I'm going to describe the charge to which I

22   understand you'll each plead guilty.  It's described as a

23   lesser-included offense under Count IV of the indictment.  The

24   way I'm going to explain it to you is I'll first tell you

25   about Count IV as it's charged in the indictment and what the

12

1  Government would have to prove to convict you of that offense.

2  And then I'll explain how the Government's burden in proving

3  you guilty would be changed under the lesser version of it to

4  which you're pleading guilty.  All right.  At any point if any

5  of you have a question about that let me know.

6          So that the crime charged in Count IV is described

7  as conspiracy to distribute and to process with intent to

8  distribute Fentanyl and oxycodone.  To prove you guilty of

9  that offense as it's charged in the indictment, the Government

10 would have to prove several facts beyond a reasonable doubt.

11 They'd have to prove that each of you entered into an

12 agreement with at least one other person and it could be, you

13 know, one or more of some of the other people at the table.

14         They'd have to prove that the purpose of that

15 agreement was to distribute the controlled substance.  And in

16 this case they've had to prove in particular that the

17 controlled substances involved in the agreement involved

18 Fentanyl and oxycodone.  They'd have to prove that you entered

19 into this agreement knowingly and intentionally and not as the

20 result of some accident or mistake.  They'd have to prove --

21 I'm pausing only because the indictment mentions resulting in

22 death.  That's one of the elements of the charge -- the

23 statutory charge.

24         MR. GERDES:  Correct, Your Honor.  That's charged in

25 the indictment.

13

1          THE COURT:  Wanted to make sure I had that right.

2   So as I said, they'd have to prove that the object of the

3   agreement was to distribute those controlled substances.

4   They'd have to prove that the amount of Fentanyl involved in

5   this agreement or intended to be distributed was 400 grams or

6   more.  They'd have to prove that as a result of your conduct

7   and the conduct of others involved in that agreement that were

8   reasonably foreseeable to you, persons who's identified in the

9   indictment as Jan Doe Number 1 died as a result; they'd have

10  to prove that you entered into this agreement or did something

11  to make it succeed; that somebody else did something to make

12  it succeed within the Eastern District of New York.  That's a

13  geographical area.  That includes Brooklyn, Queens, Nassau,

14  Suffolk and Staten Island.  They'd have to prove each of you

15  was involved in this agreement at some point during the period

16  from March through May of 2016.

17          Counsel for the Government, have I omitted or

18  misstated any of the essential elements of the offense?

19          MR. GERDES:  No, Your Honor.

20          THE COURT:  Okay.  Mr. Ballance, do you feel that

21  you understand what the Government would have to prove to

22  convict you of the greater -- as -- diversion of the offenses

23  charged in the indictment?

24          DEFENDANT BALLANCE:  Yes.

25          THE COURT:  Okay.  Mr. Carrillo, do you feel that

14

1  you understand what the Government would have to prove?

2              DEFENDANT CARRILLO:  Yes.

3              THE COURT:  And Mr. Monroe, do you feel that you

4  understand what the Government would have to prove?

5              DEFENDANT MONROE:  Yes.

6              THE COURT:  Okay.  Now, what I've described to you

7  is what they would have to prove to convict you of the offense

8  as it's charged.  I understand you'll each plead guilty to a

9  less serious version of that offense.  And not looking at the

10 statute, I want to make sure with respect to Ms. Gerdes that

11 I'm right, that it's not just the amount that wouldn't have to

12 be proved, but also the resulting in death?

13             MR. GERDES:  No, Your Honor.  Just the amount, 40

14 grams of Fentanyl.

15             THE COURT:  Don't have to prove the resulting death?

16             MR. GERDES:  No, we're doing the lesser included

17 with just the conspiracy.

18             THE COURT:  Right.  So you wouldn't have to prove

19 the amount or the death?

20             MR. GERDES:  Correct.

21             THE COURT:  Okay.  That's what I thought.

22             MR. GERDES:  We wouldn't have to prove the 400

23 grams, but the amount we would have to prove is still 40

24 grams.

25             THE COURT:  Oh, 40 grams.  Okay.  Gotcha.

15

1          MR. GERDES:  Sorry for the confusion.

2          THE COURT:  Okay.  All right.  So gentlemen, you

3    heard me tell you that there are two aspects of the agreement

4    to distribute these controlled substances about the amount and

5    the result.  The amount would have to be at least 400 grams

6    and the result would have had to be the death of an

7    individual.  The less serious version of the offence would

8    require the Government to prove everything I told you about

9    except the amount wouldn't have to be 400 grams.  They'd have

10   to prove only that the amount involved at least 40 grams of

11   Fentanyl.  And they wouldn't have any burden to prove that

12   death resulted from the conduct.

13          Mr. Ballance, do you understand that?

14          DEFENDANT BALLANCE:  Yes.

15          THE COURT:  And Mr. Carrillo, do you understand?

16          DEFENDANT CARRILLO:  Yes.

17          THE COURT:  And Mr. Monroe, do you understand?

18          DEFENDANT MONROE:  Yes.

19          THE COURT:  Okay.  Now, do you all -- gentlemen, do

20   you all feel that you understand now what the Government would

21   have to prove to convict you of the lesser-included offense

22   under Count IV of the indictment?

23          THE DEFENDANTS:  Yes.

24          THE COURT:  You're all indicating yes.  Now, you

25   each have the right to plead not guilty and make the

16

1    Government prove all those things.  Do you understand that?

2                THE DEFENDANTS:  Yes.

3                THE COURT:  Now, if you plead not guilty, under our

4    Constitution you'll be entitled to a speedy and public trial

5    by a jury with the assistance of counsel on that charge.  Do

6    you all understand that?

7                THE DEFENDANTS:  Yes.

8                THE COURT:  Now -- I'm sorry.  Counsel, are all of

9    you appointed?

10               MR. FRANZ:  Yes.

11               MR. STEIN:  Yes.

12               THE COURT:  Okay.  So you all have appointed

13   counsel.  I want to make sure you understand, gentlemen, that

14   since you can't afford private counsel, the Court has

15   appointed each of your attorneys to represent you.  And those

16   attorneys will represent you at every stage of this case.  If

17   you want a trial, they'll represent you at trial.  If you're

18   found guilty, they'll represent you at sentencing.  If you

19   want to challenge your conviction or your sentence on appeal,

20   they'll represent you for that.  If for any reason the

21   attorney currently assigned to you becomes unavailable,

22   another lawyer will be appointed to represent you and all of

23   that will be at no cost to you.  You all understand that?

24               THE DEFENDANTS:  Yes.

25               THE COURT:  Okay.  Now, at a trial you'd be presumed

17

1    innocent.  The Government would have to overcome that

2    presumption and prove your guilt beyond a reasonable doubt.

3    You would not have to prove your innocence.

4              If the Government failed to prove your guilt beyond

5    a reasonable doubt, the jury would have a duty to find you not

6    guilty.  Do you understand that?

7              THE DEFENDANTS:  Yes.

8              THE COURT:  Also, at the trial the Government would

9    have to bring its witnesses to court so that they could

10   testify in your presence.  Your attorney would have the right

11   to cross-examine those witnesses.  Your attorney would have

12   the right to object to any evidence that the Government tried

13   to offer against you and your attorney would have the right to

14   offer evidence in your behalf if your attorney thought that

15   that might assist you and that there was evidence that might

16   assist you in that.

17             Your attorney would also have the right to compel

18   witnesses whom you wish to call to appear at the trial.  You

19   each understand that?

20             THE DEFENDANTS:  Yes.

21             THE COURT:  Everybody indicated yes.

22             Also at the trial you would each have the right to

23   testify in your own behalf if you wish to do so, but you

24   couldn't be forced to be a witness at your trial and that's

25   because under our Constitution no one can be forced to testify

18

1    against himself.

2              So if you decided to go to trial and if you decided

3    not to testify, the Judge would tell the jury not to consider

4    your silence in deliberating on the verdict.  Do you each

5    understand that?

6              THE DEFENDANTS:  Yes.

7              THE COURT:  Now, if you plead guilty and it's based

8    on my recommendation, the Court accepts that plea, you'll be

9    giving up your right to trial and the other rights that I've

10   been discussing with you.  There won't be a trial.  You will

11   simply be found guilty on the basis of your plea and you'll

12   never be able to challenge that finding of guilt.  Not in the

13   appeal in this case, not in some later case, not ever.  The

14   question of your guilt would be settled for all time.  Do you

15   understand that?

16             THE DEFENDANTS:  Yes.

17             THE COURT:  You should also understand that if you

18   decide to plead guilty I'm going to ask you some questions and

19   I'll do this individually.  I'm going to ask each of you some

20   questions about what you did that makes you think you

21   committed this offense.  If you decide to answer my questions

22   and tell me you committed this offense, you'll be giving up

23   your right not to be a witness against yourself.  Do you

24   understand that?

25             THE DEFENDANTS:  Yes.

1          THE COURT:  Everybody is indicating yes.  And are

2   you all willing to give up your rights to a trial and the

3   other rights that I've just told you about?

4          THE DEFENDANTS:  Yes.

5          THE COURT:  Everybody indicate yes.

6          All right.  Now, I'm going to talk next about the

7   written agreements that you've all signed.  I've got -- let me

8   just make sure this is correct.  I've got the original

9   documents that each of you signed here on the bench with me.

10  Do you all have copies of your individual agreements at the

11  desk there with you?

12         THE DEFENDANTS:  Yes.

13         THE COURT:  Okay.  Very good.  Now, gentlemen, if at

14  any point while we're discussing these documents do you want

15  to look at the original document you signed, just let me know

16  and I'll bring it down to you.  And I think I'd better do this

17  part individually.

18         Mr. Ballance, the document that you signed is that

19  your agreement with the Government?

20         DEFENDANT BALLANCE:  Yes.

21         THE COURT:  Okay.  And you read and understand it --

22  understood it before you signed it?

23         DEFENDANT BALLANCE:  Yes.

24         THE COURT:  I'm not going to go through it page by

25  page and paragraph by paragraph because I don't want to give

20

1  you the wrong idea if there's any one part of it that's more

2  important or less important than any other part.  As far as I

3  can tell, it's the whole document.  That's your agreement with

4  the Government.  Is that your understanding as well?

5          DEFENDANT BALLANCE:  Yes.

6          THE COURT:  Do you think the Government has made any

7  promises to you that are not written down in this document?

8          DEFENDANT BALLANCE:  No.

9          THE COURT:  Okay.  Ms. Kellman, is that your

10  understanding as well?

11          MS. KELLMAN:  Yes, Your Honor.

12          THE COURT:  And Ms. Gerdes, Mr. Spektor, is that

13  your understanding?

14          MR. GERDES:  Yes, Your Honor.

15          THE COURT:  Okay.  Now, turning to Mr. Carrillo, I'm

16  going to have the same questions for you.  Is the document

17  you've signed that I've got here is that your agreement with

18  the Government?

19          DEFENDANT CARRILLO:  Yes.

20          THE COURT:  And is the whole -- is it your

21  understanding that it's the whole document that's your

22  agreement, not just some parts and not other parts?  That's

23  your understanding?

24          DEFENDANT BALLANCE:  Yes.

25          THE COURT:  Has the Government made any promises

21

1   that are not included in the agreement?

2           DEFENDANT BALLANCE:  No.

3           THE COURT:  Okay.  And Mr. Franz, that is your

4   understanding as well?

5           MR. FRANZ:  That is, Your Honor.

6           THE COURT:  Mr. Spektor and Ms. Gerdes, that's your

7   understanding?

8           DEFENDANT CARRILLO:  Yes, Your Honor.

9           THE COURT:  Okay.  And turning next to Mr. Monroe.

10  This document that you signed, is it, in fact, your agreement

11  with the Government?

12          DEFENDANT MONROE:  Yes.

13          THE COURT:  It's the whole thing that you're in

14  agreement, not just in part, correct?

15          DEFENDANT MONROE:  Yes.

16          THE COURT:  Do you think the Government has made any

17  promises that are not written down in your agreement?

18          DEFENDANT MONROE:  No.

19          THE COURT:  Okay.  Mr. Stein, is that your

20  understanding as well?

21          MR. STEIN:  Yes.

22          THE COURT:  And Mr. Spektor and Ms. Gerdes, that's

23  your understanding?

24          MS. GERDES:  Yes, Your Honor.

25          THE COURT:  Okay.  Then gentlemen, let's talk next

22

1    about what could happen at sentencing if you're convicted of

2    the lesser-included offense under Count IV.  And if I'm not

3    mistaken, anybody who thinks I'm wrong please let me know, but

4    if I'm not mistaken it's the same sentence and possibilities

5    for all three of you, so I just wanted to talk to you as a

6    group about that.  Okay.

7              In each case if you're convicted of the lesser-

8    included offense under Count IV, the Court could sentence you

9    to spend up to 40 years in prison.  Do you all understand

10   that?

11             THE DEFENDANTS:  Yes.

12             THE COURT:  Answer out loud if you would, please.

13             THE DEFENDANTS:  Yes.

14             THE COURT:  Okay.  The Court must require you under

15   normal circumstances to spend at least five years in prison.

16   Do you all understand that?

17             THE DEFENDANTS:  Yes.

18             THE COURT:  Yes.  In addition to prison the Court

19   must also impose a term of what's called supervised release of

20   at least four years and possibly as long as the rest of your

21   life.  What that means is upon your release from prison you

22   would be supervised and you'd have to obey certain conditions.

23   And if during that period of supervision of at least four

24   years and possibly as long as the rest of your life if during

25   that period you were to violate any of the conditions of your

23

1    supervised releease, you could be sentenced to spend up to

2    three more years in prison without credit for the time that

3    you'd already been in prison and without credit for the time

4    that you had already been supervised.  Do you all understand

5    that?

6                    THE DEFENDANTS:  Yes.

7                    THE COURT:  In addition to prison and supervised

8    release the Court could sentence you to pay a monetary fine of

9    up to five million dollars.  Do you all understand that?

10                   THE DEFENDANTS:  Yes.

11                   THE COURT:  Indicating yes.  In addition to

12   everything I've already told you about, the Court can require

13   each of you to pay restitution in the full amount of each

14   victim's lawsuit resulting from the offenses -- the offense to

15   be -- in an amount to be determined by the court.  You all

16   understand that?

17                   THE DEFENDANTS:  Yes.

18                   THE COURT:  Let me say one word about that.  I don't

19   know what the maximum amount of restitution you might be

20   ordered to pay might be and there are some people who might

21   say, if you can't tell me the worst possible outcome of

22   sentencing I don't want to take a chance, I don't want to

23   plead guilty, and that's fine.  If you need to know what the

24   highest amount of restitution that the Court might order you

25   to pay is going to be, don't plead guilty today because I

24

1    can't tell you what that is.  You all understand that?

2              THE DEFENDANTS:  Yes.

3              THE COURT:  All indicated yes.  Are you all willing

4    to proceed, even though I can't tell you that?

5              THE DEFENDANTS:  Yes.

6              THE COURT:  Okay.  Good.  Next, in addition to

7    everything else I've already told you about, the Court must

8    require each of you to pay what's called a special assessment

9    in the amount of $100.  Do you all understand that?

10             THE DEFENDANTS:  Yes.

11             THE COURT:  And finally, the Court must require --

12   or can require you as part of the sentence to pay what's

13   called forfeiture, forfeit property.  And in that regard I

14   just want to draw your attention, each of you, to paragraph 6

15   of your respective agreements.  For Mr. Ballance, the

16   agreement is that there will be entered a forfeiture money

17   judgment in the amount of $100,000.  And with respect to

18   Mr. Carrillo and Mr. Monroe, each of you -- your agreements

19   refer to a forfeiture money judgment in the amount of

20   $150,000.  And Mr. Carrillo, your agreement also refers to

21   specific property, firearm and ammunition that were seized on

22   December 5, 2016.  So part of your -- those amounts and in

23   your case, Mr. Carrillo, those items, those are all things

24   that you anticipate will be ordered forfeited.  You give up

25   any claim to them.  Understand all that?

25

1          DEFENDANT CARRILLO:  Yes.

2          THE COURT:  Mr. Ballance, do you understand?

3          DEFENDANT BALLANCE:  Yes.

4          THE COURT:  Mr. Carrillo?

5          DEFENDANT CARRILLO:  Yes.

6          THE COURT:  And Mr. Monroe?

7          DEFENDANT MONROE:  Yes.

8          THE COURT:  Okay.  Mr. Spektor and Ms. Gerdes, have

9   I omitted or misstated any of the potential sentencing

10  possibilities?

11          MS. GERDES:  No, Your Honor.

12          THE COURT:  Okay.  Gentlemen, addressing the

13  defendants, do you feel that you all understand what could

14  happen at sentencing if you're convicted of a lesser-included

15  offense under Count IV?

16          THE DEFENDANTS:  Yes.

17          THE COURT:  Okay.  Then I'll go on next to talk

18  about how the judge will go about choosing your sentences

19  from -- within that range of possibility.  The first thing we

20  should talk about in that regard is the federal sentencing

21  guidelines.  Have you each discussed those with those

22  attorneys?

23          THE DEFENDANTS:  Yes.

24          THE COURT:  Okay.  Now, I see that for each of you

25  in your respective agreements the Government has provided its

1    calculation of how the guidelines will apply in this case.

2    And I'm sure the prosecutors tried to be accurate in providing

3    that estimate.  What you must each understand is that those

4    calculations, that estimate may be wrong, and any calculation

5    or estimate of the guidelines that you've gotten from any

6    other source, whether it's the prosecutors or your attorneys

7    or anyone else may also be wrong.  And that's because the only

8    calculation of guidelines that's going to count in your case

9    is the one that the judge does at the time of your sentencing.

10   Do you all understand that?

11              THE DEFENDANTS:  Yes.

12              THE COURT:  The way these guidelines work is they

13   help the judge consider a sentence by coming up with two

14   scores.  The first score measures the seriousness of your

15   offense.  So, for example, in a drug case the amount of drugs

16   involved will affect that first score.  Do you all understand

17   that?

18              THE DEFENDANTS:  Yes.

19              THE COURT:  The second score is based on your own

20   personal history.  So if you've had a previous conviction that

21   could affect the second score.  Do you understand that?

22              THE DEFENDANTS:  Yes.

23              THE COURT:  With these two scores the judge can look

24   up in a table the box that corresponds to those two numbers.

25   And written down inside that box is a range of months and

27

1    that's the recommended sentencing guideline range for the

2    case.  Do you understand how that works?

3              THE DEFENDANTS:  Yes.

4              THE COURT:  Now, the judge must consider imposing a

5    sentence within that recommended range, but he could also

6    impose a sentence that's more severe or more lenient.  And in

7    making that determination the judge will have to take into

8    account the circumstances of the offense and in each case your

9    background.  I'll need to consider the need to promote with

10   respect to the law and the need to impose a just punishment on

11   each of you.  He'll each consider the need to deter you and

12   others from committing crimes in the future and he'll need to

13   consider any need each of you may have for effective

14   correctional treatment.  And the judge will take all of those

15   factors into account and come up with a sentence that is fair

16   and appropriate for each of you.  Do you all understand that?

17             THE DEFENDANTS:  Yes.

18             THE COURT:  Now, to help the judge make that

19   decision the Probation Department in each of your cases is

20   going to write a report.  There will be a separate report for

21   each one of you.  And as the Probation Department prepares

22   that report they'll want to sit down to talk to each of you

23   and you can have your attorney present for the interview.

24   They'll probably also talk to prosecutors and the agents, may

25   talk to others as well.  And for each of you they'll write a

28

1 report that has a discussion of what happened in this case and

2 your background.  They'll have a discussion of the law that

3 applies and it will have a calculation of the sentencing

4 guideline range that applies -- sentencing guidelines that

5 applies.  You'll have a chance to review that report and read

6 it with your attorney before your sentence.  You all

7 understand that?

8         THE DEFENDANTS:  Yes.

9         THE COURT:  Now, you may not like what you see in

10 the report.  You may think that it's inaccurate or unfair in

11 some way.  You may think that it gets the guidelines wrong or

12 it gets the law wrong.  None of those will be a reason to take

13 back your guilty plea.  Do you all understand that?

14         THE DEFENDANTS:  Yes.

15         THE COURT:  Now, if you think there's a problem with

16 the Probation Department's report what you can do is object to

17 it and your attorney will help you file those objections.  The

18 judge will hear arguments from the attorneys on both sides

19 about those objections and will rule on them, and then he'll

20 listen to you and your attorney and the prosecutor.  If you're

21 a victim so may listen to victims.  You may hear from others

22 as well.  And he'll calculate the sentencing guidelines that

23 apply and then he'll sentence you.  He'll do that for each of

24 you individually.

25         And at any step along the way in that process you

29

1  may think that the judge makes a mistake of some sort, may

2  think he gets the law or the facts wrong, may think he's

3  unfair, maybe gets the guidelines wrong, again, none of that

4  will be a reason to take back the guilty plea.  Do you

5  understand that?

6            THE DEFENDANTS:  Yes.

7            THE COURT:  Any questions?  I -- Mr. Monroe, I

8  didn't hear, did you say yes?

9            DEFENDANT MONROE:  Yes.

10            THE COURT:  Okay.  All right.  And just make sure.

11  Now, normally if the judge were to make a mistake in

12  sentencing you would have the right to appeal that sentence to

13  a higher court.  You wouldn't have the right to appeal the

14  finding of the appeal if you pleaded guilty, but even after

15  pleading guilty you would still have the right to appeal an

16  unlawful sentence.  Do you all understand that?

17            THE DEFENDANTS:  Yes.

18            THE COURT:  However, I see that in each of your

19  cases each of you has agreed not to file an appeal or

20  challenge your sentence in any other way as long as the

21  sentence is below a certain level.  Mr. Ballance, you've

22  agreed that you won't challenge your sentence on appeal or in

23  any other way as long as -- forgive me.  I had it here a

24  moment ago.

25            MS. GERDES:  Page 3, Your Honor, I believe.

1           THE COURT:  Yeah.  No, I'm looking for it.

2           MR. SPEKTOR:  108 --

3           MR. GERDES:  108, paragraph 4.

4           THE COURT:  Oh, I'm sorry.  I was looking at the

5   wrong portion.  Thank you.  Yes.  So as long as the total

6   result, Mr. Ballance, is a sentence of 108 months or less

7   you've agreed not to challenge your sentence on appeal or

8   elsewhere.  Is that correct?

9           DEFENDANT BALLANCE:  Yes.

10          THE COURT:  Okay.  Mr. Carrillo, in your case the

11  cutoff is at 168 months.  As long as the sentence is 168

12  months in prison or less it is -- you won't appeal your

13  sentence or challenge it in any other way, is that correct?

14          DEFENDANT CARRILLO:  Yes.

15          THE COURT:  And for you, Mr. Monroe, as long as the

16  sentence is 121 months or less in prison you won't challenge

17  your appeal -- your sentence on appeal or in any other way, is

18  that correct?

19          DEFENDANT MONROE:  Yes.

20          THE COURT:  Okay.  Now, gentlemen, by making those

21  cutoffs part of your agreement each of you is giving up a part

22  of the right that you would otherwise have to appeal an

23  unlawful sentence.  Do you all understand that?

24          THE DEFENDANTS:  Yes.

25          THE COURT:  And is it your intention to give up that

31

1    part of your right to appeal, Mr. Ballance?

2              DEFENDANT BALLANCE:  Yes.

3              THE COURT:  Mr. Carrillo?

4              DEFENDANT CARRILLO:  Yes.

5              THE COURT:  And Mr. Monroe?

6              DEFENDANT MONROE:  Yes.

7              THE COURT:  Okay.  Gentlemen, is there anything --

8    each of you consider this separately.  Is there anything at

9    all any of you would like to ask me about the crime charged in

10   this case, about the reduction of the offense that you're

11   pleading to, about your rights, about the sentencing

12   possibilities or anything at all?

13             THE DEFENDANTS:  No.

14             THE COURT:  Okay.  I want to give each of you

15   another chance to answer that question.  The reason I do that

16   is that people do sometimes change their minds about pleading

17   guilty and I want to make sure you each understand that if you

18   come back after today and ask to withdraw your guilty plea,

19   the prosecutors will probably argue that you shouldn't be

20   allowed to do so because you said today that you understood

21   what you were doing and they might win that argument.

22             So if there's anything that you need to ask about or

23   think about before making a decision to plead guilty now is

24   really the time to do it because later is -- it may be too

25   late.  You all understand that?

1          THE DEFENDANTS:  Yes.

2          THE COURT:  And Mr. Ballance, is there anything

3  you'd like to ask me about?

4          DEFENDANT BALLANCE:  No.

5          THE COURT:  And Mr. Carrillo, is there anything

6  you'd like to ask me?

7          DEFENDANT CARRILLO:  No.

8          THE COURT:  Mr. Monroe, is there anything you'd like

9  to ask me?

10          DEFENDANT MONROE:  No.

11          THE COURT:  Gentlemen, do any of you feel that you

12  need some more time to think about your decision or to discuss

13  with your attorney?

14          THE DEFENDANTS:  No.

15          THE COURT:  Okay.  Then, I'll -- I think it -- at

16  this point I'm going to go one at a time for the rest of the

17  allocution.

18          Ms. Kellman, do you know of any legal reason why

19  Mr. Ballance should not plead guilty?

20          MS. KELLMAN:  No, Your Honor.

21          THE COURT:  Mr. Ballance, are you satisfied with the

22  legal representation you've received up until this point?

23          DEFENDANT BALLANCE:  Yes.

24          THE COURT:  Okay.  Then tell me, please, how do you

25  plead to the lesser included offense under Count IV of the

33

1    indictment, conspiracy to distribute and possess with intent

2    to distribute Fentanyl and oxycodone; guilty or not guilty?

3             DEFENDANT BALLANCE:  Guilty.

4             THE COURT:  Are you making this plea of guilty

5    voluntarily and of your own free will?

6             DEFENDANT BALLANCE:  Yes.

7             THE COURT:  Has anyone threatened or forced you to

8    plead guilty?

9             DEFENDANT BALLANCE:  No.

10            THE COURT:  Other than the promises that are written

11   down in your agreement with the Government has anyone made any

12   promise that is causing you to plead guilty?

13            DEFENDANT BALLANCE:  No.

14            THE COURT:  Has anyone made any promise about what

15   your sentence will be?

16            DEFENDANT BALLANCE:  No.

17            THE COURT:  Then tell me, please, in your own words

18   what you did that makes you think you committed that offense?

19            DEFENDANT BALLANCE:  Between March 2016 and May 2016

20   in the Queens Bridge Houses and elsewhere I agreed with others

21   to possess with intent to distribute approximately 40 grams of

22   Fentanyl.  At the time in this I knew it was illegal.

23            THE COURT:  All right.  You said at the Queens

24   Bridge Houses.  I assume that's in Queens, New York

25            DEFENDANT BALLANCE:  Yes.

34

1          THE COURT:  And you said approximately 40 grams of

2    Fentanyl.  Did you understand that the purpose of the

3    agreement was to distribute at least 40 grams?

4          DEFENDANT BALLANCE:  Yes.

5          THE COURT:  Okay.  And counsel for the Government is

6    there anything further that you'd like me to elicit or that

7    you'd like to proffer?

8          MS. GERDES:  No, Your Honor.

9          THE COURT:  Okay.  Do you agree with me that

10   Mr. Ballance's allocution satisfies all the essential elements

11   of the offense?

12         MS. GERDES:  Yes, Your Honor.

13         THE COURT:  All right.  Then let me turn next to

14   Mr. Carrillo.  And Mr. Franz, is there any legal reason why

15   your client should not plead guilty?

16         MR. FRANZ:  No.

17         THE COURT:  Mr. Carrillo, are you satisfied with the

18   legal representation you've received up until now?

19         DEFENDANT CARRILLO:  Yes.

20         THE COURT:  Then tell me, please, how do you plead

21   to the charge contained -- the lesser-included offense under

22   Count IV of the indictment accusing you of conspiracy to

23   distribute and possess with intent to distribute Fentanyl and

24   oxycodone; guilty or not guilty?

25         DEFENDANT CARRILLO:  Guilty.

35

1          THE COURT:  Are you making this plea of guilty

2     voluntarily and of your own free will?

3          DEFENDANT CARRILLO:  Yes.

4          THE COURT:  Has anyone threatened or forced you to

5     plead guilty?

6          DEFENDANT CARRILLO:  No.

7          THE COURT:  Other than the promises that are written

8     down in your agreement with the Government has anyone made any

9     promise that is causing you to plead guilty?

10          DEFENDANT CARRILLO:  No.

11          THE COURT:  Has anyone made any promise about what

12     your sentence will be?

13          DEFENDANT CARRILLO:  No.

14          THE COURT:  Then please tell me in your own words

15     what you did that makes you think you committed this offense?

16          DEFENDANT CARRILLO:  Between March 2016 and May

17     2016 --

18          THE COURT:  Just slow down because we have to make a

19     clear record of it.

20          DEFENDANT CARRILLO:  Between March 2016 and May 2016

21     I entered into an agreement with others to distribute or

22     control substance which contain Fentanyl.  I stipulate that an

23     amount of Fentanyl involved was approximately 40 grams and

24     that this conduct occurred in the Eastern District of New

25     York.

36

1          THE COURT:  Okay.  And did you enter into this
2    agreement knowingly and intentional, not as a result of some
3    sort of accident or mistake?
4          DEFENDANT CARRILLO:  Yes.
5          THE COURT:  You said it was approximately 40 grams.
6    Do you agree that the amount was at least 40 grams?
7          DEFENDANT CARRILLO:  Yes.
8          THE COURT:  Okay.  Ms. Gerdes or Mr. Spektor, is
9    there anything further I should elicit or that you'd like to
10   proffer?
11         MS. GERDES:  No, Your Honor.
12         THE COURT:  And do you agree with me that
13   Mr. Carrillo's allocution satisfies all the essential elements
14   of the offense?
15         MS. GERDES:  Yes.
16         THE COURT:  All right.  Finally, turning to
17   Mr. Monroe, Mr. Stein, is there any legal reason why your
18   client should not plead guilty?
19         MR. STEIN:  No.
20         THE COURT:  Mr. Monroe, are you satisfied with the
21   legal representation you've received up until now?
22         DEFENDANT MONROE:  Yes.
23         THE COURT:  Then tell me, please, how do you plead
24   to the lesser-included account -- lesser-included count under
25   Count IV -- let me start that again.  I messed it up.  Tell

37

1  me, please, how do you plead to the lesser-included offense

2  under Count IV of the indictment accusing you of conspiracy to

3  distribute and possess with -- intent to distribute Fentanyl

4  and oxycodone; guilty or not guilty?

5              DEFENDANT MONROE:  Guilty.

6              THE COURT:  Are you making that plea of guilty

7  voluntarily and of your own free will?

8              DEFENDANT MONROE:  Yes.

9              THE COURT:  Has anyone threatened you or forced you

10  to plead guilty?

11              DEFENDANT MONROE:  No.

12              THE COURT:  Other than the agreed -- the promises

13  written down in your written agreement with the Government has

14  anyone made any promise that is causing you to plead guilty?

15              DEFENDANT MONROE:  No.

16              THE COURT:  Has anyone made any promise about what

17  your sentence will be?

18              THE DEFENDANTS:  No.

19              THE COURT:  Will you please tell me in your own

20  words what you did that makes you think you committed this

21  offense?

22              DEFENDANT MONROE:  Between March 2006 and May 2006 I

23  entered an agreement with others -- '16.  March --

24              THE COURT:  When you said 2006, you meant --

25              DEFENDANT MONROE:  Oh.

38

1          THE COURT:  -- 2016?

2          DEFENDANT MONROE:  '16, yeah.

3          THE COURT:  Okay.

4          DEFENDANT MONROE:  And May 2016 I entered in an

5    agreement with others to distribute a controlled substance

6    which contained Fentanyl and the amount was 40 grams in the

7    Eastern District of New York.

8          THE COURT:  And did you enter into this agreement

9    knowingly and intentionally, not as a result of some sort of

10   accident or mistake?

11         DEFENDANT MONROE:  Yes.

12         THE COURT:  Okay.  And Ms. Gerdes or Mr. Spektor, is

13   there anything further you'd like me to elicit or that you'd

14   like to proffer?

15         MS. GERDES:  No, thank you, Your Honor.

16         THE COURT:  Do you agree that Mr. Monroe's

17   allocution satisfies all of the essential elements of the

18   offense?

19         MS. GERDES:  We do.

20         THE COURT:  All right.  Well, based upon what I've

21   heard today I find that each of the three defendants before me

22   is competent to proceed.  I further find that each is acting

23   voluntarily.  I find that each plea is not the result of any

24   force or threats or undisclosed promises.  I find that each of

25   the three defendants before me fully understands his rights

39

1  and the potential consequences of his plea and that in each of

2  the three cases there is a factual basis for the defendant's

3  plea of guilty.

4        I therefore, respectively recommend that the Court

5  accept each of these three defendants pleas of guilty to the

6  lesser-included offense under Count IV of the indictment.  And

7  let me give you a schedule for sentencing proceedings.

8        For Mr. Ballance, I'll ask you to appear before

9  Judge Cogan on October 2nd at 4:30 p.m.  For Mr. Carrillo,

10  I'll ask you to appear before Judge Cogan on October 4th at

11  4:30 p.m.  And for Mr. Monroe, I'll ask the parties to appear

12  before Judge Cogan for a sentencing procedure on October 6th

13  at 10:00 a.m.  All right.

14        MR. STEIN:  Judge, did you say October 4th at 4:30?

15        THE COURT:  I did.

16        MR. STEIN:  Thank you.  Judge, I don't have a

17  calendar with me.  Do you know what day of the week

18  October 6th is?

19        UNIDENTIFIED VOICE:  It's a Friday.

20        THE COURT:  There you go.  It's a Friday.  But, of

21  course, I can't control -- I've been given these dates by

22  Judge Cogan's chambers.

23        MR. STEIN:  I understand.

24        THE COURT:  If it's a problem, please contact his

25  chambers.

40

1          MR. STEIN:  I'll send him a letter.

2          THE COURT:  Yeah.  All right.  I'm going to return

3     to the prosecutor for safekeeping each of the three original

4     signed plea agreements.  Is there anything else for today,

5     folks?  No?  Thank --

6          MS. GERDES:  Nothing from the Government, Your

7     Honor.

8          THE COURT:  Thank you all and I appreciate all the

9     work that you all put in to make sure that we could go so

10    smoothly taking a plea from three people together.  I think it

11    was very efficient and I appreciate it.

12          MS. GERDES:  Thank you to the Court for doing it.

13          THE COURT:  Thank you all.  Have a good day.

14          ATTORNEY:  Thank you, Your Honor.

15          (Proceedings concluded at 2:51 p.m.)

16               *  *  *  *  *  *

17

18

19

20

21

22

23

24

25

41

1          I certify that the foregoing is a court transcript

2   from an electronic sound recording of the proceedings in the

3   above-entitled matter.

4

5

6   _____

7          Ruth Ann Hager, C.E.T.**D-641

8   Dated:   June 23, 2017